UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

EDWARD LEE BARKSDALE,

                    Petitioner,

v.                                    CIVIL ACTION NO. 2:05cv245
                                      [ORIGINAL CRIMINAL NO. 2:03cr176]
UNITED STATES OF AMERICA,

                    Respondent.

## OPINION AND FINAL ORDER

This matter comes before the court on petitioner Edward Lee Barksdale's motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255. For the reasons set forth below, the motion is **DENIED**.

## I. Factual and Procedural History

On November 17, 2003, Barksdale, who had been previously convicted of a felony crime, was charged in a one-count indictment with Felon in Possession of a Firearm and Ammunition, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2).[1] Assistant Federal Public

---

[1] The indictment charges that on or about July 8, 2003, Barksdale, having been previously convicted of a felony crime punishable by a term of imprisonment exceeding one year, unlawfully and knowingly possessed in and affecting commerce a revolver and ammunition, which had been shipped and transported in interstate commerce, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2). This offense of Felon in Possession of a Firearm and Ammunition carries a statutory maximum sentence of 10 years incarceration. See 18 U.S.C. §§ 922(g)(1), 924(a)(2). Contrary to Barksdale's assertion in his § 2255 motion, see Pet'r's Mot. at 2, Barksdale was not charged with violation of 18 U.S.C. § 924(e), the Armed Career Criminal statute, which provides a mandatory minimum sentence of 15

Defender Walter B. Dalton was appointed in December, 2003, to defend Barksdale, and Dalton represented Barksdale in all relevant proceedings on this charge.  On Barksdale's behalf, Dalton filed a motion to suppress a statement that Barksdale made while in police custody without the benefit of Miranda warnings and a firearm that was recovered subsequent to his statement.[2]  A hearing on the motion to suppress was held on February 5, 2004, and the court denied the motion.[3]

On February 9, 2004, after the motion to suppress was denied, Barksdale entered an unconditional guilty plea to the one-count indictment.  There was no plea agreement, and Barksdale did not waive his right to appeal.  Shortly after pleading guilty, Barksdale was debriefed by the government.  On March 30, 2004, a presentence investigation report ("PSR") was prepared, and an

_____

years if the person who violates § 922(g) has three prior felony convictions for a violent felony or serious drug offense, or both, see 18 U.S.C. § 924(e).

  [2] Specifically, Barksdale moved to suppress the statement he made to officers, who had responded to a citizen complaint that an individual identified as Barksdale was brandishing a firearm. Barkesdale told the officers that he would take them to the firearm.  Barksdale also moved to suppress the firearm recovered subsequent to this statement.

  [3] The court concluded that the statement fell within the public safety exception to Miranda v. Arizona, 384 U.S. 436 (1966), announced in New York v. Quarles, 467 U.S. 649 (1984), and since the statement was admissible, the firearm was not tainted derivative evidence.

addendum to the report was prepared on April 26, 2004.[4]   The PSR assigned Barksdale a base offense level of 24.   PSR Worksheet A. No enhancements to Barksdale's offense level were applied.   Id. Instead, Barksdale was credited with a three-level reduction in offense level for acceptance of responsibility, see id. at 5, ¶¶ 16-19, Worksheets A & D, for a total offense level of 21, id. Worksheet D.   The PSR assigned Barksdale 10 criminal history points for five prior sentences, and two criminal history points for committing the instant offense while being released on parole, for a total of 12 criminal history points, resulting in a criminal history category of V.   See id. Worksheet C.   With a total offense level of 21 and a criminal history category of V, Barksdale was assigned a guideline range of 70 to 87 months incarceration.   See id. Worksheet D.   Neither the government nor Barksdale raised any objections to the PSR.   The PSR was adopted in full, and Barksdale was sentenced to 70 months incarceration and three years supervised release on May 6, 2004.[5]   Barksdale did not file a direct appeal.

Instead, on April 21, 2005, Barksdale timely filed this motion to vacate, set aside, or correct sentence, pursuant to 28 U.S.C. § 2255.   In his motion, Barksdale raises essentially three grounds

---

[4] The guideline range for Barksdale's offense of conviction is calculated according to the November 1, 2003, edition of the United States Sentencing Commission Guidelines Manual.

[5] No fine was imposed, and the court waived the costs of prosecution, incarceration, and supervised release.

for § 2255 relief.   First, Barksdale challenges his receipt of three criminal history points under U.S.S.G. § 4A1.1(a) for a sentence imposed for a Robbery conviction, arguing that U.S.S.G. § 4A1.2(d) (Offenses Committed Prior to Age Eighteen) should have been applied.   Pet'r's Mot. at 5, Attach. at 1-2.   Second, Barksdale argues that the fact he had been previously convicted of a felony crime, and the facts of his prior sentences and status as an active parolee, enhanced his sentence in violation of his Sixth Amendment rights under <u>Blakely v. Washington</u>, 542 U.S. 296 (2004), and <u>United States v. Booker</u>, 543 U.S. 220 (2005).   Pet'r's Mot. at 5, Attach. at 1-2.[6]   Third, Barksdale alleges that his counsel rendered ineffective legal assistance by failing to review the PSR with him and by failing to correct any and all sentence miscalculations.   <u>Id.</u> at 6.

On June 23, 2005, the government responded to Barksdale's § 2255 motion, arguing that the motion should be denied because (1) three criminal history points were properly assigned under § 4A1.1(a) for the sentence imposed for the Robbery conviction, and § 4A1.2(d) (Offenses Committed Prior to Age Eighteen) is not

---

[6]Although Barksdale does not cite <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), he raises an <u>Apprendi</u> claim by arguing that the fact he had been previously convicted of a felony crime, which is an element of his offense of conviction, was not proven by a jury beyond a reasonable doubt, in violation of his Sixth Amendment rights.   <u>See</u> Pet'r's Mot. Attach. at 2.   Since the government addresses the merits, or lack thereof, of any <u>Apprendi</u> claim, the court will likewise do so.

applicable to this sentence; (2) Barksdale admitted in his guilty plea that he had been previously convicted of a felony, and any claim under <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), is without merit, and neither <u>Blakely</u> nor <u>Booker</u> is retroactively applicable to cases on collateral review; and (3) Barksdale's counsel's assistance was not constitutionally ineffective.  In support of this final argument, the government attached an affidavit of Barksdale's counsel Mr. Dalton, dated June 14, 2005, wherein Dalton avers that he reviewed the PSR with Barksdale; Barksdale agreed that the guidelines were correctly applied in the PSR, so no objections to the PSR were raised; and Barksdale never requested an appeal.[7]  Gov't's Resp., Attach. 1 (Dalton's Aff.).  On July 19, 2005, Barksdale replied to the government's response, to which reply he attached a sworn statement, dated July 17, 2005, wherein Barksdale declares that he instructed Dalton to file a notice of appeal.  Pet'r's Reply, Attach. (Barksdale's Sworn Statement) ¶ 3.

Since Dalton's affidavit and Barksdale's sworn statement contradicted on the issue of whether Barksdale requested Dalton to file a notice of appeal, the court ordered that a hearing be held on this limited issue and directed that counsel be appointed to represent Barksdale at the hearing.  Barksdale appeared with

---

[7] Barksdale had asserted in his motion that he did not raise his claims of error on direct appeal because his counsel did not file a notice of appeal as he had requested.  <u>See</u> Pet'r's Mot. at 4, 6.

counsel at the hearing held on October 24, 2005, and both Barksdale and Dalton testified at length on their communications with each other during Dalton's representation of Barksdale.  <u>See</u> Excerpt of Proceedings held on October 24, 2005 (filed November 1, 2005) (Barksdale's Test.) (hereinafter "11/1/05 Excerpt"); Transcript of Proceedings held on October 24, 2005 (filed on November 18, 2005) (Dalton's Test.) (hereinafter "11/18/05 Tr.").

In support of his claim that he instructed Dalton to file a notice of appeal, Barksdale sought to admit as evidence copies of two letters Barksdale claimed that he wrote and mailed to Dalton, after his sentencing, from the correctional facility in Youngstown, Ohio.  The court conditionally admitted the copies of the two letters and directed the government to obtain information on the inmate mail logs at the Youngstown, Ohio, correctional facility during the period of time that Barksdale claimed he mailed the letters to Dalton.  11/1/05 Excerpt at 24.  Barksdale also requested a continuance to subpoena his fiancé Christina Wilson to testify to the chain of custody of the copies of the two letters sought to be admitted.  11/18/05 Tr. at 38.  Wilson testified at the second hearing on this matter, held on November 22, 2005, as did Kevin Miles, an investigator from the correctional facility in Youngstown, Ohio.  Following the second hearing, the government submitted an affidavit of William Fain, Supervisor of the Mail Room at the facility in Youngstown, Ohio.  Barksdale's § 2255 motion is

now ripe for decision.

## II. Analysis

Barksdale proceeds under 28 U.S.C. § 2255, which provides:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255 (2005). While the relief available under § 2255 is comprehensive, collateral review under this section is not a substitute for direct appeal, which is the "normal and customary method" of correcting trial errors. Sunal v. Large, 332 U.S. 174, 177 (1947); see also United States v. Addonizio, 442 U.S. 178, 184 (1979). Accordingly, a defendant generally "must clear a significantly higher hurdle than would exist on direct appeal" to obtain § 2255 relief on the basis of trial errors raised for the first time in his § 2255 motion. United States v. Frady, 456 U.S. 152, 166 (1982).

Since Barksdale filed his § 2255 motion pro se, the court reviews his arguments with appropriate consideration, see Gordon v. Leeke, 574 F.2d 1147 (4th Cir. 1978), but in order to obtain § 2255 relief, Barksdale bears the burden of proving his grounds for relief by a preponderance of the evidence, see Vanater v. Boles,

377 F.2d 898, 900 (4th Cir. 1967); Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958).  The court has thoroughly reviewed the record in this case, and held a hearing on the limited issue of whether Barksdale requested Dalton to file a notice of appeal.  A hearing was not necessary to address the remaining issues raised in Barksdale's § 2255 motion.  See 28 U.S.C. § 2255 (providing that the court need not hold a hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief").

## A.   Ineffective Assistance of Counsel

In contrast to most claims of trial error, an ineffective assistance of counsel claim may be more properly brought in a § 2255 proceeding than on direct appeal.  See Massaro v. United States, 538 U.S. 500, 504 (2003); United States v. DeFusco, 949 F.2d 114, 120-21 (4th Cir. 1991); United States v. Li, 973 F. Supp. 567, 572 (E.D. Va. 1997) (Smith, J.).  Accordingly, the hurdle of obtaining relief on the basis of ineffective assistance of counsel is the same whether the claim is raised collaterally or on direct appeal:  the defendant must satisfy the two components of ineffective assistance announced in Strickland v. Washington, 466 U.S. 668, 687, 697 (1984).  Under Strickland, the defendant first must demonstrate that counsel's performance was deficient. Strickland, 466 U.S. at 687.  Strickland explained that "the performance inquiry must be whether counsel's assistance was

reasonable considering all the circumstances." Id. at 688. Second, the defendant must demonstrate that the deficient performance prejudiced the defense. Id. at 687. Unless the deficient performance resulted in an actual or constructive denial of counsel altogether, such that prejudice is presumed, the defendant must affirmatively demonstrate prejudice by showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 692-94; see also United States v. Peak, 992 F.2d 39, 41-42 (4th Cir. 1993). The court need not address both components of an ineffective assistance of counsel claim if the defendant makes an insufficient showing on one. Strickland, 466 U.S. at 697.

## 1. Failure to Review PSR and Object to Sentence Miscalculations

Barksdale alleges that Dalton's legal assistance was ineffective because Dalton failed to review the PSR with him and failed to correct any and all miscalculations of his sentence. Pet'r's Mot. at 6. The facts, however, show that the guidelines were correctly applied in the PSR, resulting in a correctly calculated guideline range. For this reason, Dalton's failure to object to the correct calculation of Barksdale's sentence was certainly reasonable under Strickland, and Barksdale suffered no prejudice by Dalton's failure to object to the calculation of his

sentence or to review the PSR with him, if he had not done so.[8]

The PSR correctly applied U.S.S.G. § 2K2.1(a)(2), the guideline section providing the base offense level for Unlawful Possession of Firearms or Ammunition, to assign Barksdale a base offense level of 24. See PSR Worksheet A. Section 2K2.1(a)(2) provides for a base offense level of 24 "if the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense." Barksdale plainly had two prior

_____

[8] Although the hearing was not held on the issue of Dalton's alleged failure to review the PSR with Barksdale, because the motion, files, and records of the case conclusively show that Barksdale suffered no prejudice by Dalton's failure to review the PSR with him, Barksdale's and Dalton's testimonies at the October 24, 2005, hearing show that Dalton did, in fact, review the PSR with Barksdale. Both Dalton and Barksdale testified that Dalton met with Barksdale after the PSR was prepared and before Barksdale's May 6, 2004, sentencing. See 11/18/05 Tr. at 23-25; 11/1/05 Excerpt at 10-11. Both testified that Barksdale objected to certain guideline applications in the PSR, and Dalton explained to Barksdale that there was no basis for raising the objections. See 11/18/05 Tr. at 24-25; 11/1/05 Excerpt at 11. Dalton credibly testified that after he explained to Barksdale that there was no basis for raising the objections, he "took a great deal of time trying to explain to [Barksdale] in detail from the beginning how his guidelines were calculated." 11/18/05 Tr. at 24. Dalton testified that he showed Barksdale the applicable guideline sections in the manual and reminded him that he had accurately predicted his guidelines range in estimates he had provided him in their meeting following the hearing on the motion to suppress. See id.; see also 11/18/05 Tr. at 20-21; 11/1/05 Excerpt at 8 (indicating that Dalton met with Barksdale following the hearing on the motion to suppress, reviewed the applicable guidelines with him, and provided him estimates of his possible guideline range). According to Dalton, after reviewing the applicable guideline sections with Barksdale, Barksdale agreed that the guidelines were correctly applied, so no objections were raised. See 11/18/05 Tr. at 25, 28.

felony convictions countable under § 2K2.1(a)(2): a Robbery conviction and a Possession of Cocaine with Intent to Distribute conviction. See id. at 6-8, ¶¶ 21-22. Both of these offenses are punishable by imprisonment for a term exceeding one year. See U.S.S.G. § 2K2.1, comment. (n.5) (defining "felony conviction"); PSR at 6-8, ¶¶ 21-22 (indicating that the sentences imposed for these offenses exceeded one year). Barksdale was age 18 or older when he committed both offenses. See U.S.S.G. § 2K2.1, comment. (n.5) (providing that only adult convictions are counted and a conviction for an offense committed at age 18 or older is an adult conviction); PSR at 2, 6-7, ¶¶ 21-22 (indicating that Barksdale, born on July 16, 1969, committed the Robbery on January 19, 1988, when he was 18 years old, and the drug offense on March 11, 1990, when he was 21 years old). Robbery is a crime of violence within the meaning of § 2K2.1(a)(2), see U.S.S.G. § 4B1.2(a)(1) (defining "crime of violence" as "any offense under federal or state law . . . that has an element the use, attempted use, or threatened use of physical force against the person of another"); Whitley v. Cunningham, 135 S.E.2d 823, 827 (Va. 1964) (observing that Robbery, defined under common law as "taking with intent to steal the personal property of another from his person or in his presence, against his will, by violence or intimidation" is "an offense

against the person"). [9] Possession of Cocaine with Intent to Distribute is a controlled substance offense within the meaning of § 2K2.1(a)(2), see U.S.S.G. § 4B1.2(b) (defining "controlled substance offense" as "an offense under federal or state law, . . . that prohibits the . . . possession of a controlled substance (or counterfeit substance) with intent to manufacture, import, export, distribute, or dispense"). Finally, both are convictions for which Barksdale received criminal history points under U.S.S.G. § 4A1.1(a). See U.S.S.G. § 2K2.1, comment. (n.15) (providing that only those felony convictions that receive criminal history points under § 4A1.1(a)-(c) are counted under subsection (a)(2)); PSR Worksheet C. Accordingly, § 2K2.1(a)(2) was correctly applied in the PSR, resulting in a proper base offense level of 24. [10]

        The PSR correctly applied U.S.S.G. § 4A1.1 to assign Barksdale 12 criminal history points for his five prior sentences and status as an active parolee. Contrary to Barksdale's contention in his § 2255 motion, see Pet'r's Mot. at 5, Attach. 1-2, § 4A1.1(a) was correctly applied to the prior sentence imposed for the Robbery conviction. See PSR Worksheet C. Section 4A1.1(a) provides that

---

[9] In Virginia, the crime of Robbery is defined by common law rather than by statute. See Johnson v. Commonwealth, 163 S.E.2d 570, 572-73 (Va. 1968).

[10] The PSR applied no enhancements to Barksdale's base offense level, and credited Barksdale with a three-level reduction in offense level for acceptance of responsibility, for a total offense level of 21. See PSR Worksheets A & D.

three points are assigned "for each prior sentence of imprisonment exceeding one year and one month."  Since Barksdale was committed to the Department of Corrections for a period not to exceed four years, id. at 6, ¶ 21, Barksdale received a sentence for the Robbery conviction that exceeded one year and one month, see U.S.S.G. § 4A1.2, comment. (n.2) (directing that the length of an indeterminate sentence of imprisonment, for the purposes of applying § 4A1.1(a), is the stated maximum).  Barksdale was 18 years old when he committed the Robbery, see supra at 11; therefore, contrary to Barksdale's contention in his motion, § 4A1.2(d), the guideline section for Offenses Committed Prior to Age Eighteen, should not have been applied.  See U.S.S.G. § 4A1.2(d).[11]  The sentence for the Robbery was imposed, and imprisonment on the sentence was served, within 15 years of June 8, 2003, the date that Barksdale committed the instant offense.  See U.S.S.G. § 4A1.2(e) (providing that any prior sentence exceeding one year and one month that was imposed within 15 years of the defendant's commencement of the instant offense, or resulted in incarceration during any part of that 15 year period, is counted

---

[11] Although Barksdale was committed to the Department of Corrections as a "Youthful Offender" for the Robbery conviction, see PSR at 6, ¶ 21, Barksdale's age at the time of the commencement of the offense, not the jurisdiction's juvenile classification, determines whether § 4A1.2(d) applies.  See U.S.S.G. § 4A1.2(d), comment. (n.7) (explaining that the provision applies to offenses committed prior to age 18, "[t]o avoid disparities from jurisdiction to jurisdiction in the age at which a defendant is considered a 'juvenile'").

under § 4A1.1(a)); PSR at 6-7, ¶ 21 (indicating that the sentence for the Robbery conviction was imposed on June 17, 1988, and Barksdale was released from imprisonment on this sentence on October 31, 1989). Three criminal history points were, therefore, properly assigned under § 4A1.1(a) for the sentence imposed for the Robbery conviction. For the same reasons, three criminal history points were also properly assigned under § 4A1.1(a) for Barksdale's prior sentence of 20 years incarceration imposed on December 4, 1990, for Possession of Cocaine with Intent to Distribute, which offense was committed on March 11, 1990. See U.S.S.G. § 4A1.1(a); PSR at 7-8, ¶ 22, Worksheet C.

Two points were properly assigned under § 4A1.1(b) for a prior sentence of 12 months incarceration for an Assault and Battery conviction. See U.S.S.G. § 4A1.1(b) (providing that two points are assigned "for each prior sentence of imprisonment of at least sixty days not counted in (a)"); PSR at 8-9, ¶ 23, Worksheet C. One point was properly assigned under § 4A1.1(c) for a prior sentence imposed for a subsequent Assault and Battery conviction. See PSR at 9, ¶ 25, Worksheet C. Section 4A1.1(c) provides that one point is assigned "for each prior sentence not counted in (a) or (b), up to a total of 4 points for this item." For this subsequent Assault and Battery conviction, Barksdale received six months jail, suspended, conditioned on two years of good behavior. See id. at 9, ¶ 25. Since suspended sentences are counted as prior sentences

14

under § 4A1.1(c), see U.S.S.G. § 4A1.2(a)(3), one point was correctly assigned under § 4A1.1(c) for the sentence imposed for this subsequent Assault and Battery conviction.

One additional point was also properly assigned under § 4A1.1(c) for a prior sentence of 10 days jail, suspended, conditioned on 12 months good behavior, for a Driving While Suspended conviction. See PSR at 10, ¶ 26, Worksheet C. Since points are assigned for Driving While Suspended sentences only if the sentence was a term of at least one year probation or at least 30 days imprisonment, see U.S.S.G. § 4A1.2(c)(1), and 12 months good behavior is the equivalent of one year probation, see id. § 4A1.1, comment. (n.4), one point was properly assigned under § 4A1.1(c) for the sentence imposed for this Driving While Suspended conviction. Finally, two points were properly assigned under § 4A1.1(d) because Barksdale committed the instant offense while released on parole for the Possession of Cocaine with Intent to Distribute conviction, which parole was not set to expire until March 23, 2010. See U.S.S.G. § 4A1.1(d) (providing that two points are assigned for "committ[ing] the instant offense while under any criminal justice sentence, including . . . parole . . . ."); PSR at 7-8, ¶ 22, Worksheet C. Therefore, § 4A1.1 was correctly applied to assign Barksdale 12 criminal history points, resulting in a criminal history category of V. With a total offense level of 21 and a criminal history category of V, the PSR correctly attributed

Barksdale with a guideline range of 70 to 87 months incarceration. See U.S.S.G. Sentencing Table.

Since Dalton's failure to object to Barksdale's correctly calculated sentence was professionally reasonable and Barksdale suffered no prejudice by Dalton's failure to object to Barksdale's sentence calculation or to review Barksdale's PSR with him, if he had not done so, Barksdale's ineffective assistance of counsel claim based on Dalton's alleged failure to review Barksdale's PSR with him and object to Barksdale's sentence calculation must be **DENIED**.[12]

### 2.   Failure to File a Notice of Appeal

### a.   Specific Instructions to File a Notice of Appeal

In Roe v. Flores-Ortega, 528 U.S. 470 (2000), the Supreme Court held that the Strickland components apply to claims that counsel was constitutionally ineffective for failing to file a notice of appeal. See Flores-Ortega, 528 U.S. at 476-77, see also Strickland, 466 U.S. at 687 (holding that to establish constitutionally ineffective assistance, the defendant must show

---

[12] To the extent that Barksdale claims that Dalton's legal assistance was ineffective because Dalton failed to raise a Sixth Amendment objection to Barksdale's sentence, this claim also fails. Dalton's failure to raise an objection under Apprendi was neither professionally unreasonable nor prejudicial to Barksdale's defense, because there plainly was no Apprendi error in Barksdale's case. See infra at 30-31. Dalton's failure to raise an objection based on Blakely or Booker was certainly professionally reasonable as neither opinion had been rendered at the time of Barksdale's sentencing. See infra at 31-32.

that counsel's performance was professionally unreasonable and that counsel's deficient performance prejudiced the defense).  Flores-Ortega reaffirmed the Court's prior holdings that counsel's disregard of a defendant's specific instructions to file a notice of appeal is professionally unreasonable.  See 528 U.S. at 477. Such deficient performance is also presumptively prejudicial.  Id. at 483-84 (explaining that prejudice is presumed where counsel's deficient performance deprives the defendant of the appellate proceeding altogether); see also Peak, 992 F.2d at 42 (holding that counsel's failure to file a notice of appeal as requested necessarily deprives the defendant of his Sixth Amendment right to the assistance of counsel).  If the defendant shows that counsel disregarded the defendant's specific instructions to file a notice of appeal, the defendant is entitled to § 2255 relief in the form of a belated appeal.  See Peak, 992 F.2d at 42.

Barksdale alleges that Dalton disregarded his specific instructions to file a notice of appeal, see Pet'r's Mot. at 4; Pet'r's Reply, Attach. (Barksdale's Sworn Statement) at ¶ 3, but Barksdale has failed to show the truth of this allegation by a preponderance of the evidence.  It is undisputed that Dalton met with Barksdale on May 6, 2004, immediately following imposition of Barksdale's sentence, see 11/18/05 Tr. at 5, 29-30; 11/1/05 Excerpt at 12, but the testimonies of Barksdale and Dalton contradict on the issue of what transpired in that meeting and in the months

following it.  Barksdale testified in the October 24, 2005, hearing that he discussed appeal with Dalton at this meeting, and that he specifically told Dalton he wanted to appeal.  11/1/05 Excerpt at 12-13.  Barksdale further testified that after this meeting, while he was incarcerated at the correctional facility in Youngstown, Ohio, he wrote and mailed two letters, one dated June 10, 2004, and one dated July 13, 2004, to Dalton.  Id. at 13-15.  According to Barksdale, he made copies of the letters for his own records before he mailed them.  Id. at 20.  Then, shortly thereafter, he mailed the copies to his fiancé Christina Wilson, who later returned the copies to Barksdale.  Id. at 19-20.  Barksdale sought to admit as evidence in the October 24, 2005, hearing documents that he claimed were the copies of the letters that Wilson returned to him.  Id. at 16, 20.  These documents purport to inquire of the status of Barksdale's appeal, and the document dated July 13, 2004, states that Barksdale's fiancé has called Dalton's office numerous times and has been unable to speak with Dalton.  See Def.'s Ex. 1 (copies of letters dated June 10, 2004, and July 13, 2004).

Dalton testified in the October 24, 2005, hearing that when he met with Barksdale immediately following Barksdale's sentencing hearing, Barksdale only inquired about speeding up a parole violation hearing pending in state court, and did not express a desire to appeal or instruct Dalton to file a notice of appeal.  See 11/18/05 Tr. at 6, 29-30.  Dalton further testified that he

18

received no correspondence or telephone calls from Barksdale or on Barksdale's behalf after Barksdale's sentencing.  Id. at 30-33.

Barksdale called his fiancé, Christina Wilson, to testify at the second hearing on this matter, held on November 22, 2005. Wilson's testimony contradicted Barksdale's previous testimony regarding the chain of custody of the copies of the two letters. Wilson testified that she never received the copies that Barksdale claimed that he mailed to her, so the copies that Barksdale sought to admit as evidence could not have been obtained from Wilson, as Barksdale claimed.  See 11/1/05 Excerpt at 16, 20.  More significantly, Wilson testified to receiving two other letters from Barksdale, which letters were admitted as evidence in the November 22, 2005, hearing.  The first letter, dated September 6, 2005, is handwritten and from Barksdale to Wilson.  See Gov't's Ex. 4A (handwritten letter dated September 6, 2005).  The first letter directs Wilson to sign and notarize the second letter and return it to Barksdale so that he can give it to his attorney.  Id.  The second letter is dated September 7, 2005, typed, and purportedly from Wilson to the undersigned judge.  Gov't's Ex. 4 (typed letter dated September 7, 2005).  The second letter states that Barksdale requested Dalton to appeal; Wilson told Dalton that Barksdale wanted to appeal; and Dalton told Wilson, when he finally returned her phone calls, that Barksdale's appeal was being prepared.  See id.  In regard to this second letter, Wilson credibly testified

19

that she did not write it, nor did she sign and notarize it as Barksdale had directed her to do, because it contained falsehoods. Wilson testified that she never, at any point, spoke to Dalton about appeal.  Contrary to the assertion in the second letter, she never told Dalton after Barksdale's sentencing hearing that Barksdale wanted to appeal; and contrary to the assertion in the second letter and in the copy of the letter dated July 13, 2004, she never called Dalton after Barksdale was sentenced.

Wilson's credible testimony not only undermines the authenticity of the copies of the letters Barksdale sought to admit as evidence, but her testimony indisputably casts doubt on Barksdale's overall credibility.  Given Dalton's and Wilson's credible testimonies to the effect that neither Barksdale, nor anyone on Barksdale's behalf, requested an appeal or inquired about an appeal, and given Barksdale's apparent attempt to contrive evidence that he requested an appeal and had Wilson inquire about an appeal, Barksdale has not met his burden of showing by a preponderance of the evidence that he instructed Dalton to file a notice of appeal.[13]

---

[13] Kevin Miles, an investigator at the correctional facility in Youngstown, Ohio, testified at the November 22, 2005, hearing, that he did not know whether the facility maintained records of outgoing inmate mail.  The affidavit of William Fain, Supervisor of the Mail Room at the Youngstown, Ohio facility, submitted by the government after the November 22, 2005, hearing, indicates that no records of outgoing inmate mail were kept during the period of time Barksdale claims that he mailed the letters to Dalton.  Therefore, no evidence was presented verifying that Barksdale mailed any

### b.    Consultation About Appeal

The particular question presented in Flores-Ortega was whether counsel performed deficiently under Strickland by failing to file a notice of appeal where the defendant neither instructed counsel to file an appeal nor asked that an appeal not be taken.  See Flores-Ortega, 528 U.S. at 478; see also Frazier v. South Carolina, 430 F.3d 696, 704-05 (4th Cir. 2005) (explaining that "Flores-Ortega simply crystalizes the application of Strickland to the specific context of [ineffectiveness claims based on the failure to appeal]").  Flores-Ortega held that counsel's failure to consult with the defendant about an appeal may itself constitute deficient performance, if counsel had a constitutionally imposed duty to do so.  See 528 U.S. at 478 (employing the term "consult" to mean "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes").  Flores-Ortega explained that counsel has a constitutionally imposed duty to consult only "when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to

letters to Dalton from the Youngstown, Ohio correctional facility during the period of time at issue, other than Barksdale's quite dubious testimony.

counsel that he was interested in appealing." Id. at 480.[14] Even if counsel had a constitutionally imposed duty to consult, such that counsel's failure to consult satisfies the Strickland deficient performance component, Flores-Ortega held that the defendant must still satisfy the Strickland prejudice component by showing "that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." Id. at 484. To show a reasonable probability that he would have appealed, the defendant must show either that (1) there were nonfrivolous grounds for appeal or (2) he demonstrated to counsel his interest in appealing and "had [he] received reasonable advice from counsel about the appeal, he would have instructed his counsel to file an appeal." Id. at 486; see also Frazier, 430 F.3d at 708.

―――――――――――

[14] Conviction following a guilty plea is a "highly relevant factor" in determining whether counsel had a constitutionally imposed duty to consult "both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." Flores-Ortega, 528 U.S. at 480. For example, Flores-Ortega indicated that counsel would not have a duty to consult under the following circumstances:

> [A] defendant consults with counsel; counsel advises the defendant that a guilty plea will probably lead to a 2 year sentence; the defendant expresses satisfaction and pleads guilty; the court sentences the defendant to 2 years' imprisonment as expected and informs the defendant of his appeal rights; the defendant does not express any interest in appealing, and counsel concludes that there are no nonfrivolous grounds for appeal.

Id. at 479.

Barksdale claims that Dalton disregarded his instructions to file a notice of appeal, and does not allege that Dalton failed to consult with him regarding appeal.  However, the issue of whether Dalton consulted with Barksdale regarding appeal arises in this case because the evidence shows that Barksdale did not specifically instruct Dalton one way or the other whether to file a notice of appeal.  See Flores-Ortega, 528 U.S. at 478-80 (holding that circumstances may render counsel's failure to file a notice of appeal deficient performance even where the defendant did not specifically instruct counsel to file an appeal notice); see also United States v. Witherspoon, 231 F.3d 923 (4th Cir. 2000) (remanding for consideration of whether counsel consulted with the defendant about appeal where defendant alleges that counsel was constitutionally ineffective for failing to file a notice of appeal as requested).  Considering all the information that Dalton knew or should have known, see Flores-Ortega, 528 U.S. at 480, any failure by Dalton to consult with Barksdale about an appeal after Barksdale's sentencing was reasonable and not constitutionally deficient.

The testimony at the October 24, 2005, hearing conclusively shows that Dalton consulted with Barksdale about appeal when he met with Barksdale following the February 5, 2004, hearing on the motion to suppress.  During this meeting, Dalton advised Barksdale that if he proceeded to trial and was found guilty, Barksdale could

appeal the conviction and the denial of the motion to suppress. 11/18/05 Tr. at 14-15.  On the other hand, if Barksdale entered an unconditional guilty plea, appeal of the ruling on the motion to suppress would be essentially foreclosed, but Dalton advised Barksdale that he would likely receive the benefit of a reduction of his offense level for acceptance of responsibility.  Id. at 15-16.  Dalton also reviewed the applicable guidelines with Barksdale during this meeting and provided Barksdale with estimates of his possible guideline range.  See id. at 20-22; 11/1/05 Excerpt at 6.[15]

After consulting with Dalton about appeal following the hearing on the motion to suppress, Barksdale chose to enter an unconditional guilty plea, foreclosing appeal of the ruling on the motion to suppress.[16]  After his guilty plea, Barksdale began

---

[15] Dalton testified in the October 24, 2005, hearing that he also probably told Barksdale during this meeting that a guilty plea would not foreclose appeal of any sentencing issues.  11/18/05 Tr. at 19.

[16] The Supreme Court reaffirmed in Tollett v. Henderson, 411 U.S. 258, 267 (1973) that "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.  He may only attack the voluntary and intelligent character of the guilty plea . . . ."  Moreover, the Fourth Circuit has held that "direct review of an adverse ruling on a pre-trial motion is available only if the defendant expressly preserves that right by entering a conditional guilty plea."  See United States v. Wiggins, 905 F.2d 51, 52 (4th Cir. 1990); see also United States v. Bundy, 392 F.3d 641, 645 (4th Cir. 2004) (stating that "[a]bsent a valid conditional guilty plea, we will dismiss a defendant's appeal from an adverse pretrial ruling on a non-jurisdictional issue").  Barksdale has not attacked the voluntary and intelligent character of his guilty plea.

cooperating with the government, in the hopes that he would receive a reduction of whatever sentence he received. See 11/18/05 Tr. at 17-18, 37; 11/1/05 Excerpt at 37-38. The guidelines were correctly applied in the PSR that was prepared prior to Barksdale's sentencing. See supra at 10-16.[17] The court adopted the PSR in full, and sentenced Barksdale to 70 months incarceration, the lowest possible sentence within his guideline range. A 70 month sentence was well below the statutory maximum sentence of 10 years; therefore, there was no basis to argue that the sentence was imposed in violation of law. Cf. Frazier, 430 F.3d at 709 (identifying two nonfrivolous grounds for appeal: imposition of a $100,000 fine when defendant's guilty plea exposed him to a statutory maximum fine of $25,000, and imposition of consecutive sentences without request from the prosecution and to the surprise of both the prosecution and defense).

Since there was no basis for an appeal, a rational defendant in Barksdale's circumstances would not have wanted to pursue an appeal and there was no reason for Dalton to think otherwise.

---

Rather, he admitted in the October 24, 2005, hearing that he stated under oath during his plea colloquy that his constitutional rights were observed, and his constitutional rights were, in fact, observed. 11/1/05 Excerpt at 35-36.

[17] As previously noted, Dalton credibly testified that after reviewing the PSR with Barksdale and explaining to him that the guidelines were correctly applied in the PSR, Barksdale agreed that the guidelines were correctly applied, so no objections to the PSR were raised. See supra note 8.

Moreover, the testimony at the October 24, 2005, hearing reveals an additional reason why Barksdale would not have wanted to appeal. Dalton believed, and Barksdale confirmed, that Barksdale was hoping that his cooperation with the government would result in a reduction to his sentence.  11/18/05 Tr. at 36-37; 11/1/05 Excerpt at 37-38.  Dalton understood that the government would be less likely to pursue a reduction of Barksdale's sentence, if Barksdale pursued an appeal.  11/18/05 Tr. at 37.  Therefore, a rational defendant in Barksdale's circumstances would not have wanted to file a baseless appeal when appealing could have jeopardized his chance for a sentence reduction.

Finally, there is no credible evidence that Barksdale expressed an interest in appealing.  Although Barksdale testified that he expressed an interest in appealing in nearly every meeting with Dalton, including in their first meeting when there was nothing yet to appeal, see 11/1/05 Excerpt at 3-4, 10, 12, Barksdale's credibility on this point is undermined by his attempt to contrive evidence that he instructed Dalton to file a notice of appeal and inquired about appeal after his sentencing, see supra at 17-20.  In contrast, Dalton credibly testified that Barksdale did not, at any point, express an interest in appealing.  11/18/05 Tr. at 6, 30.  According to Dalton, in his meeting with Barksdale immediately following Barksdale's sentencing hearing, instead of expressing a desire to initiate further proceedings, Barksdale only

26

expressed a desire to speed up a pending parole violation hearing in state court. Id. at 29-30.

Under these circumstances, any failure by Dalton to consult with Barksdale again about appeal after Barksdale's sentencing hearing was reasonable and not constitutionally deficient. See Flores-Ortega, 528 U.S. at 479-80 (holding that counsel has a duty to consult only when (1) a rational defendant would want to appeal (because there are nonfrivolous grounds for appeal) or (2) this particular defendant reasonably demonstrated to counsel that he was interested in appealing); see also Strickland, 466 U.S. at 689 (instructing that a fair assessment of counsel's performance requires evaluating the challenged conduct from counsel's perspective at the time, while indulging a "strong presumption that counsel's challenged conduct falls within the wide range of reasonable professional assistance"). In addition, Barksdale has not shown prejudice resulting from any absence of consultation. Barksdale has not demonstrated nonfrivolous grounds for appeal.[18]

---

[18] Barksdale's claims of guideline calculation and Apprendi error are plainly without merit. See infra at 29-31. Neither Blakely nor Booker, which were decided after Barksdale's judgment of conviction became final, were available to afford Barksdale a ground for appeal. See infra at 31-32. Moreover, an argument for the holding in Booker was not viable under controlling precedent existing at the time for filing a notice of appeal in this case. See United States v. Morris, 429 F.3d 65, 71 (4th Cir. 2005) (observing that between the time that Apprendi and Booker were decided, the Fourth Circuit expressly rejected that the rule of Apprendi, as later expanded in Blakely, applied to the federal sentencing guidelines).

The evidence does not show that Barksdale expressed any interest in appealing, see supra at 26-27, nor has Barksdale shown that he would have instructed Dalton to appeal had Dalton advised him that there was no basis to appeal and that raising an appeal could jeopardize the sentence reduction that he was hoping to receive. See Frazier, 430 F.3d at 708 (holding that to show prejudice under Flores-Ortega the defendant must demonstrate either that (1) there were nonfrivolous grounds for appeal or (2) he demonstrated to counsel an interest in appealing and had he received reasonable advice from counsel about appeal, he would have instructed counsel to file an appeal).  For these reasons, Barksdale's claim that Dalton was constitutionally ineffective for failing to file a notice of appeal must be **DENIED**.

### B.   Guideline Miscalculation and Apprendi Error

Unlike ineffective assistance of counsel, which may be more properly raised in a § 2255 proceeding, errors in sentencing, like most trial errors, are normally and customarily raised on direct appeal.  Accordingly, to obtain § 2255 relief on the basis of such errors raised for the first time in a § 2255 motion, the petitioner must satisfy the heightened "cause and actual prejudice" standard articulated in United States v. Frady:  the petitioner must show both (1) "cause" excusing his failure to raise the errors contemporaneously or on direct appeal, and (2) "actual prejudice" resulting from the errors.  Frady, 456 U.S. at 167-68 (1982);

United States v. Maybeck, 23 F.3d 888, 891-92 (4th Cir. 1994); United States v. Li, 973 F. Supp. 567, 572 (E.D. Va. 1997).[19] "Actual prejudice," in this sense, results only from errors that worked to the petitioner's "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Frady, 456 U.S. at 170.  The court need not address both components of the Frady standard, if the petitioner makes an insufficient showing on one.  Id. at 168.

### 1.   Guideline Miscalculation

Barksdale claims that his sentence was miscalculated because U.S.S.G. § 4A1.2(d) (Offenses Committed Prior to Age Eighteen) should have applied to the Robbery conviction.  Pet'r's Mot. at 5, Attach. at 1-2.  Barksdale, however, cannot show that a guideline application error worked to his actual and substantial disadvantage, because plainly there was no error in the application of the guidelines to his case.  See supra at 10-16 (concluding that the guidelines were correctly applied in Barksdale's case).[20]  Since

---

[19] If a petitioner shows that he is actually innocent, he may raise a claim in a collateral proceeding without satisfying the cause and actual prejudice standard.  See Bousley v. United States, 523 U.S. 614, 622 (1998).  Barksdale does not assert actual innocence, which is not an issue given his voluntary guilty plea. See supra at 2 and note 16.  Therefore, the claims Barksdale seeks to raise in his § 2255 motion will be evaluated under the Frady cause and actual prejudice standard.

[20] If Barksdale cannot show that the result of the proceeding would have been different had Dalton objected to the calculation of Barksdale's sentence, because the guidelines were correctly applied in Barksdale's case, see supra at 9-16 (conducting the Strickland

there was no guideline application error from which actual prejudice could result, Barksdale's claim of guideline miscalculation is **DENIED**.

### 2.  Apprendi Error

Barksdale argues that the fact he had been previously convicted of a felony crime, which is an element of his offense of conviction, was not proven by a jury beyond a reasonable doubt in violation of his Sixth Amendment rights.  See supra note 6 (concluding that this argument raises an Apprendi claim). Barksdale cannot show that an Apprendi error worked to his actual and substantial disadvantage, because plainly there was no Apprendi error in his case.  Apprendi held that the Sixth Amendment is violated when a fact, other than the fact of a prior conviction, found by the sentencing judge using a preponderance of the evidence standard, increases the sentence for a crime beyond the statutory maximum prescribed by the jury's verdict or the defendant's guilty plea.  Apprendi, 530 U.S. at 490.  The fact of a prior conviction was expressly exempted from Apprendi's holding, see id.; thus, Barksdale's claim of Apprendi error is defeated on this basis alone.  In addition, by pleading guilty to the indictment charging

---

prejudice analysis), then Barksdale plainly cannot show a guideline application error worked to his actual and substantial disadvantage.  See United States v. Li, 973 F. Supp. 567, 573 n.10, 575 n.17 (E.D. Va. 1997) (concluding that if the petitioner cannot satisfy the Strickland prejudice component, then he clearly cannot satisfy the more stringent actual prejudice standard of Frady).

him with Felon in Possession of a Firearm and Ammunition, Barksdale admitted to the facts described in the indictment, including the fact that he had been previously convicted of a felony crime.  See supra note 1; United States v. Broce, 488 U.S. 563, 570 (1989) (holding that by entering a plea of guilty, the accused is admitting both to the discrete acts described in the indictment and to guilt of a substantive crime).  Based solely on his guilty plea, ten years is the maximum punishment that Barksdale could have received for this crime.  See supra note 1; 18 U.S.C. §§ 922 (g)(1), 924(a)(2).  No facts were found by the sentencing judge to increase the punishment for this offense beyond the statutory maximum, and the 70 month sentence imposed was well below the statutory maximum.  Plainly, there was no Apprendi error from which actual prejudice could result; therefore, this claim is **DENIED.**

## C.   Booker Error

Barksdale further claims that the facts of his prior sentences and active parolee status enhanced his sentence in violation of his Sixth Amendment rights under Blakely and Booker.  Pet'r's Mot. at 5, Attach. at 1-2.  Blakely, decided on June 24, 2004, extended Apprendi's reasoning to invalidate the state of Washington's sentencing guidelines, which permitted the sentencing judge to increase a defendant's sentence beyond the standard range based on the judge's finding of aggravating factors.  See 542 U.S. at 303-05.  Not until Booker, decided on January 12, 2005, did the Supreme

Court hold that <u>Blakely</u> applied to the federal sentencing guidelines; therefore, Barksdale's claim, although based in part on <u>Blakely</u>, is for all practical purposes governed by the intervening decision in <u>Booker</u>.  <u>See</u> <u>United States v. Morris</u>, 429 F.3d 65, 69 n.5 (4th Cir. 2005).  Barksdale could not have raised a claim of <u>Booker</u> error contemporaneously, because <u>Booker</u>, decided after Barksdale's May 6, 2004, sentencing, announced a new rule of criminal procedure.  <u>See</u> <u>id.</u> at 71.  This new rule is not available for § 2255 relief for defendants, like Barksdale, whose judgments of conviction became final before <u>Booker</u> (or <u>Blakely</u>) was decided. <u>See</u> <u>id.</u> at 69-72 (conducting the analysis established by <u>Teague v. Lane</u>, 489 U.S. 288 (1989), to hold that the <u>Booker</u> rule does not apply retroactively).   Since Barksdale is not entitled to consideration of a <u>Booker</u> claim, his claim of <u>Booker</u> error is **DENIED**.

### III. Conclusion

For the reasons set forth above, Barksdale's motion to vacate, set aside, or correct sentence, pursuant to 28 U.S.C. § 2255 is **DENIED**.  Barksdale is **ADVISED** that he may appeal from this Opinion and Final Order by forwarding a written notice of appeal to the Clerk of the United States District Court, 600 Granby Street, Norfolk, Virginia, 23510.  The written notice of appeal must be received by the Clerk within sixty (60) days of the date of this Opinion and Final Order.

The Clerk is **DIRECTED** to send a copy of this Opinion and Final Order to Jon M. Babineau, counsel for Barksdale; Walter B. Dalton, former counsel for Barksdale; and Andrew M. Robbins, Special Assistant United States Attorney.

**IT IS SO ORDERED**.

_____/s/_____
Rebecca Beach Smith

Norfolk, Virginia

April 26, 2006